UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DISCOVISION ASSOCIATES, a California partnership,<br><br>       Plaintiff,<br><br>  v.<br><br>TOSHIBA CORPORATION, a Japanese corporation,<br><br>       Defendant. | Civil Action No. 08-cv-3693 (HB) (AJP)<br>ECF Case |

**TOSHIBA CORPORATION'S OPPOSITION TO DISCOVISION ASSOCIATES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page Nos.**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II. BACKGROUND ................................................................................................................2

III. DISCOVISION'S MOTION SHOULD BE DENIED BECAUSE TOSHIBA HAS NOT YET EVEN BEEN SERVED ..........................................................................4

IV. DISCOVISION HAS NO RIGHT TO THE SWEEPING, INTRUSIVE AUDIT THAT IT SEEKS .................................................................................................5

V. THE CASES CITED BY DISCOVISION DO NOT SUPPORT ITS MOTION ................7

VI. DISCOVISION'S MOTION SHOULD BE DENIED AS PREMATURE UNDER CONTROLLING SECOND CIRCUIT PRECEDENT AND UNDER RULE 56(f) ...........................................................................................................................8

VII. CONCLUSION .................................................................................................................10

## TABLE OF AUTHORITIES

**Page Nos.**

*Berger v. United States*,
  87 F.3d 60 (2d Cir. 1996) ..................................................................................... 8

*Central States Southeast & Southwest Areas Pension Fund v. N.E. Friedmeyer-Sellmeyer Distribution Co.*,
  650 F. Supp. 978 (E.D. Mo. 1987).......................................................................... 6

*Crystalline H2O, Inc. v. Orminski*,
  105 F. Supp. 2d 3 (N.D.N.Y. 2000) ....................................................................... 9

*First American Bank, N.A. v. United Equity Corp.*,
  89 F.R.D. 81 (D.D.C. 1981)................................................................................ 5, 8

*Gurary v. Winehouse*,
  190 F.3d 37 (2d Cir. 1999) ..................................................................................... 9

*Hellstrom v. United States Dep't of Veterans Affairs*,
  201 F.3d 94 (2d Cir. 2000) .................................................................................. 8, 9

*L&W, Inc. v. Shertech, Inc.*,
  471 F.3d 1311 (Fed. Cir. 2006) .............................................................................. 6

*Meloff v. New York Life Ins. Co.*,
  51 F.3d 372 (2d Cir. 1995) ..................................................................................... 9

*Moran v. Sasso*,
  2007 WL 2710967 (E.D.N.Y. Sept. 13, 2007) .................................................. 7, 8

*N.Y.S. Teamsters Conference Pension & Ret. Fund v. Boening Bros., Inc.*,
  92 F.3d 127 (2d Cir. 1996) ..................................................................................... 8

*Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*,
  484 U.S. 97 (1987)................................................................................................. 4

*Trustees of the Plumbers & Steamfitters Local 267 Pension v. Buchanan, Inc.*,
  2006 WL 346421 (N.D.N.Y. Feb. 14, 2006) .................................................... 7, 8

*United Equity Corp.*,
  89 F.R.D. 81 (D.D.C. 1981)................................................................................ 5, 8

### OTHER AUTHORITIES

Fed. R. Civ. P. 4........................................................................................................ 5

Fed. R. Civ. P. 26...................................................................................................... 9

Fed. R. Civ. P. 30.................................................................................................... 10

Fed. R. Civ. P. 56................................................................................................ 9, 10

## OTHER AUTHORITIES
### (Continued)

**Page Nos.**

11 *Moore's Federal Practice* § 56.13[1] (3rd ed. 2007) .................................................................. 6

10A C. Wright, A. Miller & M. Kane,
　　*Federal Practice & Procedure* § 2717 (3d ed. 1998) ......................................................... 8

10B C. Wright, A. Miller & M. Kane,
　　*Federal Practice & Procedure* § 2740 (3d ed. 1998) ......................................................... 9

Toshiba Corporation ("Toshiba") hereby files this Opposition to the Motion for Partial Summary Judgment filed by Discovision Associates ("Discovision").

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Discovision's motion for summary judgment is meritless both procedurally and substantively. Procedurally, Discovision's motion must be denied because Discovision has not yet even served Toshiba with the Summons and Complaint in this action. Instead, Discovision merely mailed a copy of the Summons and Complaint to Toshiba's offices in Tokyo, Japan. Discovision has asserted in a letter to Toshiba and in its Proof of Service that Toshiba agreed to service by mail. However, as explained in Toshiba's pending Motion to Dismiss, this is simply untrue, and is based entirely upon an untenable reading of the contract at issue in this case. In addition, Second Circuit law is abundantly clear that summary judgment is almost never appropriate where, as here, discovery has not yet even begun.

Substantively, Discovision's motion completely ignores the sole dispute between the parties on the merits – the scope of materials that Discovision or its auditors may review in conducting their audit. The parties' agreement permits Discovision's auditors to examine only "such records and other documents as may be necessary to verify or determine royalties paid or payable under this Agreement." Tarzia Decl., Ex. 1 at 17, ¶ 6.7. Toshiba does not object to such an audit. However, Discovision insists that its auditors must review an intrusive laundry list of documents that have nothing to do with whether Toshiba has paid all royalties due. Tarzia Decl., Ex. 4. In addition, without any basis in the parties' agreement, Discovision has insisted upon "[a]ccess to all manufacturing facilities and personnel, including but not limited to, all Toshiba affiliates and subsidiaries," and the right to interview "[k]ey personnel" with "questions as they arise." *Id.* at 2, ¶¶ 13-14.

Discovision's motion does not even address this dispute. Consequently, Discovision has presented no evidence whatsoever that the documents it seeks to review are "necessary to verify or determine royalties," or that the disputed employee interviews are permissible under the parties' agreement. Thus, Discovision has completely failed to support its claim of breach of

-1-

contract with any evidence or even any argument. Instead, Discovision has simply fabricated a dispute that does not exist – whether it is entitled to an audit – and declared itself the winner of this fictional dispute. That is obviously no basis for summary judgment or any other form of relief. For these reasons as well, Discovision's motion should be denied.

## II.  BACKGROUND

In March 2003, Toshiba entered into a license agreement with Discovision which authorized Toshiba to sell compact disc players, video disc players, compact disc drives, and related products in exchange for the payment of royalties. *See generally* Tarzia Decl., Ex. 1. That agreement terminated no later than March 31, 2006. *Id*. at 18, ¶ 10.1. It is undisputed that Toshiba made substantial royalty payments to Discovision under the license agreement.

Section 6.7 of the license agreement permits Discovision to conduct an audit of Toshiba's relevant records to ensure that Toshiba has paid all royalties due. Section 6.7 reads in full:

> LICENSEE [Toshiba] shall keep separate records in sufficient detail to permit the determination of royalties payable hereunder. At the request of DVA [Discovision], **LICENSEE shall permit independent auditors or technical consultants selected by DVA to examine** during ordinary business hours once in each calendar year **such records and other documents as may be necessary to verify or determine royalties paid or payable under this Agreement**. **Such auditors or technical consultants shall be instructed to report to DVA only the amount of royalties due and payable**. If no request for examination of such records for any particular accounting period has been made by DVA within three (3) years after the end of said period, the right to examine such records for said period, and the obligation to keep records for said period, will terminate.

*Id*. at 17, ¶ 6.7 (emphasis added).

On August 15, 2006, after termination of the agreement, Discovision notified Toshiba that it planned to conduct an audit under Section 6.7. Tarzia Decl., Ex. 2. Toshiba had no objection to such an audit. On September 7, 2006, Toshiba received a letter from Discovision's

auditors, the firm of Deloitte Financial Advisory Services ("Deloitte"). Tarzia Decl., Ex. 4. That letter included a "preliminary list" of materials that Discovision apparently contends are "necessary to verify or determine royalties paid or payable" under Section 6.7. *Id.*

The letter from Deloitte lists many documents that have no apparent relevance to the question of royalties due. For example, Discovision seeks copies of Toshiba's descriptions of its "technologies" and "processes." *Id.* at 2, ¶ 1. Discovision and Deloitte have never explained why these highly confidential technical documents are relevant to the audit, and in fact they are not. Takei Decl. ¶ 12. Discovision also seeks "[a]ccess to all accounting records, including but not limited to, accounts receivable and aging reports," apparently for every product made by Toshiba. Tarzia Decl., Ex. 4 at 2, ¶ 12. Again, Toshiba's records for non-licensed products plainly are not relevant to the audit. Takei Decl. ¶ 13. Beyond documents, Discovision also seeks "[a]ccess to all manufacturing facilities and personnel, including but not limited to, all Toshiba affiliates and subsidiaries," as well as the right to interview all of Toshiba's "[k]ey personnel." Tarzia Decl., Ex. 4 at 2, ¶¶ 13-14. Again, these materials are not relevant to the audit. Takei Decl. ¶¶ 14-15. Moreover, the letter from Deloitte cautioned that "this is a preliminary list and we may request additional documents as the engagement progresses." Tarzia Decl., Ex. 4 at 1.

Toshiba did object, and continues to object, to this sweeping, intrusive, and potentially unlimited audit which is not authorized by its agreement with Discovision. Accordingly, Toshiba immediately began discussions with Discovision and Deloitte in an effort to limit the audit to those materials actually permitted by the parties' licensing agreement. *See* Takei Decl. ¶¶ 4-5 & Ex. A. At the same time, Toshiba began discussions with Deloitte regarding the treatment of confidential information that Toshiba would be disclosing to Deloitte. *Id.*

These negotiations were, at the earliest stages, very productive. Deloitte immediately agreed that a non-disclosure agreement (NDA) would be appropriate to protect Toshiba's confidential information. Takei Decl. ¶ 6 & Ex. B. Deloitte even provided Toshiba with a copy of Deloitte's standard NDA form and invited Toshiba to make changes. *Id.* However, the

negotiations soon became quite frustrating for Toshiba. Takei Decl. ¶¶ 7-10; *see also* Ex. E at 1; Ex. F at 1. For example, at one point during the negotiations, Deloitte modified its own standard NDA to permit it to "disclose Confidential Information to the Client [Discovision]." Takei Decl. ¶ 8 & Ex. C at 3 ¶ 1. The license agreement, however, is abundantly clear that Discovision's auditors "shall be instructed to report to DVA only the amount of royalties due and payable," and no other confidential information. Tarzia Decl., Ex. 1 at ¶ 6.7. Toshiba, of course, objected to this unilateral revision of the license agreement and unwarranted breach of confidentiality. Takei Decl. ¶ 9 & Ex. D at 1.

Ultimately, Deloitte transferred responsibility for the negotiations to its Tokyo office, and significant progress occurred almost immediately. Takei Decl. ¶ 11. In just two months, Toshiba and Deloitte negotiated and signed a non-disclosure agreement that was to govern the confidentiality of the audited materials. *Id*. Over the next few weeks, Toshiba and Deloitte continued to discuss the materials to be included in the audit. *Id*. ¶¶ 12, 16.

While these discussions were still ongoing, Discovision filed its complaint in this action. *Id*. ¶ 16. Rather than serving the complaint and summons, Discovision instead mailed them to Toshiba's offices in Tokyo. Toshiba has filed a Motion to Dismiss or Quash Service due to Discovision's failure to serve the complaint and summons in this action. That motion is pending and is scheduled to be fully briefed before the completion of briefing on the present motion.

### III. <u>DISCOVISION'S MOTION SHOULD BE DENIED BECAUSE TOSHIBA HAS NOT YET EVEN BEEN SERVED</u>

Before the Court may exercise personal jurisdiction over a defendant, the Court must determine whether there has been a proper service of process upon the defendant. *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104 (1987). Thus, judgment plainly cannot be entered against a defendant until the defendant has been properly served. Here, as explained in Toshiba's Motion to Dismiss or to Quash Service, Discovision has never served Toshiba with the summons or complaint in this action. *See* Motion to Dismiss or Quash Service (filed June 4, 2008). Instead, Discovision has simply mailed a copy of the summons and complaint to Toshiba

in Tokyo. Service by mail is not a method of service authorized by the Federal Rules for service upon foreign corporations, such as Toshiba. *See* Fed.R.Civ.P. 4(h)(2) (incorporating by reference portions of Fed.R.Civ.P. 4(f)). In addition, as explained in Toshiba's Motion to Dismiss or Quash Service, Toshiba has never agreed to accept service by mail. *See* Motion to Dismiss or Quash Service (filed June 4, 2008).

Accordingly, Discovision's Motion for Partial Summary Judgment should be denied. At the very least, this Court should stay any decision on the Motion for Partial Summary Judgment until the issue of service has been resolved and Toshiba has been properly served. *See First American Bank, N.A. v. United Equity Corp.*, 89 F.R.D. 81, 87 (D.D.C. 1981) (postponing ruling on motion for summary judgment where the defendants had not yet answered due to a challenge to the service of the complaint).

### IV. <u>DISCOVISION HAS NO RIGHT TO THE SWEEPING, INTRUSIVE AUDIT THAT IT SEEKS</u>

In its moving papers, Discovision does not even attempt to establish entitlement to the relief it summarily seeks on this motion. Discovision first seeks a judgment that Toshiba breached the license agreement by not providing Deloitte with all the materials listed in Deloitte's September 7, 2006 letter. Motion at 3-5; Kobak Decl. ¶¶ 6-7. In addition, Discovision also seeks what appears to be a mandatory preliminary injunction compelling Toshiba to submit to the intrusive audit demanded in Deloitte's letter. Motion at 4. However, Discovision makes no effort to establish that it is entitled to any of this relief.

To the contrary, the parties' license agreement permits Discovision's auditors to examine only "such records and other documents as may be necessary to verify or determine royalties paid or payable under this Agreement." Tarzia Decl., Ex. 1 at 17, ¶ 6.7. It does not require Toshiba to submit to an examination of every document that Discovision or its auditors can think of including on a burdensome list. Discovision has submitted no evidence at all that the documents and materials listed in Deloitte's letter are "necessary to verify or determine royalties paid or payable." In fact, Discovision has not even argued in its brief that they are all relevant.

Accordingly, Discovision's motion must be denied due to a complete failure of proof. *See L&W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006) (moving party with burden of proof on the merits must present sufficient evidence to satisfy each element of its claim); 11 *Moore's Federal Practice* § 56.13[1] at 56-165 – 15-166 (3rd ed. 2007) (same).

Moreover, many of the documents listed in Deloitte's letter are plainly not "necessary to verify or determine royalties paid or payable under this Agreement." For example, Paragraph 1 of Deloitte's letter demands highly confidential technical descriptions of Toshiba's "technologies" and "processes." Tarzia Decl., Ex. 4, ¶ 1. However, these documents simply are not necessary or even relevant to determining the royalties paid or payable. Takei Decl. ¶ 12. Moreover, Discovision and Deloitte have never provided any explanation of why they want these documents. *Id.*

The same is true of the demand for "all accounting records, including but not limited to, accounts receivable and aging reports," regardless of whether those records relate to licensed products. *See* Tarzia Decl., Ex. 4 at 2, ¶ 12. Again, there is simply no apparent reason why Discovision or Deloitte needs to review accounting records for non-licensed products. Takei Decl. ¶ 13. At the very least, there is surely a genuine issue of material fact as to whether these documents are "necessary to verify or determine royalties paid or payable," as required by Section 6.7 of the license agreement. Indeed, the permissible scope of an audit is a factual issue that may be resolved by weighing the competing testimony of expert witnesses. *See Central States Southeast & Southwest Areas Pension Fund v. N.E. Friedmeyer-Sellmeyer Distribution Co.*, 650 F. Supp. 978, 979 (E.D. Mo. 1987).

In addition, as explained above, Discovision seeks non-documentary materials, including access to the manufacturing facilities and personnel of Toshiba and all of its affiliates, as well as the right to interview Toshiba personnel. Tarzia Decl., Ex. 4 at 2, ¶¶ 13-14. Again, the license agreement does not require Toshiba and its affiliates to submit to these demands, and there is absolutely no basis for Discovision's assertion that Toshiba breached the license agreement by refusing these demands. *See generally* Tarzia Decl, Ex. 1; *see also* Takei Decl., ¶¶ 14-15. At the

very least, there is a genuine issue of material fact as to whether witness interviews and access to manufacturing facilities and personnel constitute "such **records** and other **documents** as may be necessary to verify or determine royalties paid or payable," as required by Section 6.7.

Additionally, Discovision seeks to conduct an audit of Toshiba dating all the way back to March 31, 2003. *See* Complaint at 5, ¶ a. However the parties' agreement is explicit that an audit demand "for any particular accounting period" must be submitted by Discovision "within three (3) years" after the end of that accounting period. Tarzia Decl., Ex. 1, ¶ 6.7. And Discovision did not demand an audit until August 15, 2006. Tarzia Decl., Ex. 2. Thus, under the plain terms of the agreement, Discovision is not entitled to any audit at all of any accounting period ending before August 15, 2003. Once again, Toshiba clearly did not breach the license agreement by refusing to submit to an audit extending beyond the agreed-upon three-year period.

Ultimately, the Court or the jury will need to decide whether Discovision or its auditors are permitted to review the many documents that they have demanded, to conduct the interviews that they seek, and to occupy Toshiba's facilities for two months, as Discovision's auditor has estimated. *See* Tarzia Decl. ¶ 5. However, it is sheer folly for Discovision to ask the Court to resolve this issue without the benefit of evidence, before Toshiba has even answered the Complaint. The issue can only be resolved on the basis of evidence, and Discovision has submitted no evidence to this Court that the documents it seeks are "necessary to verify or determine royalties paid or payable," or that the interviews it seeks are permissible at all. Thus, Discovision's motion for summary judgment must be denied.

## V. THE CASES CITED BY DISCOVISION DO NOT SUPPORT ITS MOTION

Discovision cites two cases to support the proposition that "Summary judgment is appropriate where a party seeks to enforce its contractual right to an audit." Motion at 3 (citing *Moran v. Sasso*, 2007 WL 2710967 (E.D.N.Y. Sept. 13, 2007), and *Trustees of the Plumbers & Steamfitters Local 267 Pension v. Buchanan, Inc.*, 2006 WL 346421 (N.D.N.Y. Feb. 14, 2006)). These cases, however, provide no support for Discovision's motion. These cases hold only that

summary judgment is appropriate in audit cases, like any other case, where there is no genuine issue of material fact – a proposition that is difficult to dispute in light of Rule 56.

For example, in *Moran*, the defendant agreed that the plaintiff was entitled to an audit and there was no dispute as to the scope of the audit. Accordingly, the court ordered the audit on summary judgment. *Moran*, 2007 WL 2710967 at *2, *4. Similarly, in *Plumbers & Steamfitters*, an ERISA case, there was no dispute as to the scope of the audit permitted under the ERISA statutes and controlling case law. *Plumbers & Steamfitters*, 2006 WL 346421 at *8 (quoting *N.Y.S. Teamsters Conference Pension & Ret. Fund v. Boening Bros., Inc.*, 92 F.3d 127, 131-33 (2d Cir. 1996)). Accordingly, the court ordered that the audit take place. *Id*. Here, as explained above, the only apparent reason why Discovision filed the present lawsuit was to resolve the disputed issue of the scope of the audit permitted by the parties' license agreement. That issue remains very much in dispute, with underlying factual disputes as to the need for Discovision's auditors to review the materials and conduct the interviews they have demanded. Accordingly, summary judgment is plainly inappropriate here.

## VI. DISCOVISION'S MOTION SHOULD BE DENIED AS PREMATURE UNDER CONTROLLING SECOND CIRCUIT PRECEDENT AND UNDER RULE 56(f)

"Summary judgment should only be granted if *after discovery* the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (emphasis in original) (editorial brackets in original, omitted here). "The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Id.* "Only in the rarest of cases may summary judgment be granted" against a party denied all opportunity for discovery. *Id*. *See also Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996). Accordingly, a District Court may deny a summary judgment motion as premature when the motion is filed at the very early stages of the litigation. *First American Bank*, 89 F.R.D. at 87; 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2717 at 298-99 (3d ed. 1998).

This case cries out for such a denial. Toshiba has not yet even answered the complaint, Discovision has not yet served its initial disclosures, and Toshiba has been precluded by Fed.R.Civ.P. 26(d) from taking any discovery for the entire duration of this case. Indeed, Toshiba has not yet even been *served* with the complaint. *See* Toshiba's Motion to Dismiss or Quash Service (filed June 4, 2008). Moreover, there is nothing that would warrant classifying this case as one of "the rarest of cases" (*Hellstrom*, 201 F.3d at 97) in which pre-discovery summary judgment may be granted. Accordingly, this Court should deny Discovision's motion as premature in accordance with the Second Circuit's decision in *Hellstrom*, 201 F.3d at 97.

Similarly, this Court can and should deny Discovision's motion under Fed.R.Civ.P. 56(f). "Rule 56(f) protects a party opposing a summary judgment motion who for valid reasons cannot by affidavit … present facts essential to justify the adverse party's opposition to the motion." 10B C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2740 at 397 (3d ed. 1998). Rule 56(f) provides "an additional safeguard against an improvident or premature grant of summary judgment." *Id.* at 402.

To defeat a motion for summary judgment, a party relying upon Rule 56(f) ordinarily must show: (1) what facts will be sought through discovery, (2) how those facts are expected to create a genuine issue of material fact, (3) what effort has been made to obtain those facts, and (4) why those efforts have been unsuccessful. *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999); *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995). Where the nonmoving party has not been permitted to take *any* discovery, these criteria are applied with a great degree of liberality, and the motion for summary judgment ordinarily should be denied. *Crystalline $H_2O$, Inc. v. Orminski*, 105 F. Supp. 2d 3, 6-8 (N.D.N.Y. 2000).

Here, Toshiba has met each of these requirements under any standard of proof. First, Toshiba has identified the facts to be sought through discovery. Specifically, Toshiba needs to learn the factual basis (if any) for Discovision's contention that the materials listed in Deloitte's September 7, 2006 letter are "necessary to verify or determine royalties paid or payable," as required by Section 6.7 of the parties' license agreement. Stewart Decl. ¶ 2. Toshiba expects to

-9-

learn this information through the deposition of Dale Tarzia, the author of the Deloitte letter, as well as the depositions of the Discovision representatives who worked with Deloitte to develop their audit plan. *Id*. ¶ 3. Toshiba also may seek this information through interrogatories and through depositions of Deloitte and Discovision under Fed.R.Civ.P. 30(b)(6). *Id*.

Second, this discovery is squarely directed toward creating a genuine issue of material fact on this motion. This discovery may show that Discovision has no factual basis for seeking many of the materials demanded in Deloitte's letter. *Id*. ¶ 4. This clearly would require denial of the motion. Alternatively, if the discovery reveals that Discovision has some factual basis for its position, the discovery will provide Toshiba with an opportunity to present its own testimony or other evidence rebutting Discovision's position. *Id.* At present, Toshiba has no idea why Discovision believes that some of the demanded materials are relevant, seriously handicapping Toshiba's ability to rebut Discovision's claim of relevance.

With respect to the third and fourth criteria, Toshiba has not yet been able to obtain this discovery for the simple reason that discovery has been barred under Rule 26(d) at this embryonic stage of this case. *Id*. ¶ 5. In sum, there can be no reasonable doubt that Toshiba has satisfied the criteria under Rule 56(f), and the Court therefore should deny Discovision's motion in accordance with Rule 56(f).

## VII. <u>CONCLUSION</u>

Discovision's motion for summary judgment must be denied due to a complete failure of proof. Discovision has made no showing that the materials it demands to review are "necessary to verify or determine royalties paid or payable," as required by Section 6.7 of the parties' agreement. Nor has Discovision made any showing that it is entitled under the parties' agreement to the witness interviews it seeks. Thus, Discovision has made no showing that Toshiba has breached the parties' agreement or that it is entitled to the sweeping audit it seeks. Moreover, Toshiba, unlike Discovision, has presented evidence that directly disputes that the documents demanded by Discovision are needed for the audit. At the very least, this evidence creates a genuine issue of material fact, precluding summary judgment. Finally, even if

Discovision's failure to meet its burden of proof were disregarded, and even if Toshiba's affirmative evidence were also disregarded, Discovision's motion should be denied as premature. Toshiba has not yet been served, has not yet answered the complaint, has not yet received Discovision's initial disclosures, and has not yet been permitted even to begin discovery. The grant of summary judgment under these circumstances would be directly contrary to controlling Second Circuit precedent. For all these reasons, Discovision's motion should be denied.

Respectfully submitted,

Dated: June 23, 2008                By: /s/ Paul A. Stewart

Frank J. Colucci (FC-8441)
COLUCCI & UMANS
218 East 50th Street
New York, NY 10022-7681
Telephone: (212) 415-5700
Facsimile: (2121) 935-5728
Email: fcolucci@colucci-umans.com

Paul A. Stewart (*Pro Hac Vice*)
Irfan A. Lateef (*Pro Hac Vice*)
Reza Mirzaie (*Pro Hac Vice*)
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502
Email: paul.stewart@kmob.com
Email: irfan.lateef@kmob.com
Email: reza.mirzaie@kmob.com

Attorneys for Defendant,
TOSHIBA CORPORATION

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on June 23, 2008, he caused a copy of the foregoing Toshiba Corporation's Opposition to Discovision Associates' Motion for Partial Summary Judgment to be served on Plaintiff's counsel listed below by filing a copy with the CM/ECF system.

James B. Kobak, Jr.
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004

William T. Bisset
HUGHES HUBBARD & REED LLP
350 South Grand Avenue, 36th Floor
Los Angeles, CA 90071-34442

                                            */s/ Paul A. Stewart*
                                            Paul A. Stewart

5441613
052808