UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DISCOVISION ASSOCIATES, a California partnership,<br><br>        Plaintiff,<br><br>   v.<br><br>TOSHIBA CORPORATION, a Japanese corporation,<br><br>        Defendant. | Civil Action No. 08-cv-3693 (HB) (AJP)<br>ECF Case<br><br>**DECLARATION OF  AKIRA TAKEI<br>IN OPPOSITION TO DISCOVISION<br>ASSOCIATES' MOTION FOR<br>PARTIAL SUMMARY JUDGMENT** |

I, _____Akira Takei_____, declare as follows:

1.      I am the  General Manager of Intellectual Property  Division, Digital Media Network Company _ of Toshiba Corporation, the Defendant in this case.  I was personally involved in the discussions between Toshiba and Discovision's auditors, the firm of Deloitte Financial Advisory Services ("Deloitte") regarding Discovision's planned audit of Toshiba's records.  If called upon to do so, I could and would testify truthfully as follows.

2.      In a letter dated August 15, 2006, Discovision notified Toshiba that it planned to conduct an audit of Toshiba's records under Section 6.7 of the license agreement between Toshiba and Discovision.  I understand that a copy of this letter has been submitted to the Court as Exhibit 2 to the Declaration of Dale Tarzia.  Toshiba did not object to Discovision conducting an audit in accordance with Section 6.7 of the license agreement, and never has objected to Discovision conducting such an audit.

3.      In a letter dated September 7, 2006, Deloitte sent Toshiba a list of the materials that Deloitte wanted to review as part of the audit.  I understand that copy of this letter has been submitted to the Court as Exhibit 4 to the Declaration of Dale Tarzia.

-1-

4.    Toshiba did object, and continues to object, to an audit conducted in accordance with the Deloitte letter.  On September 12, 2006, just five days after receiving the Deloitte letter, Toshiba sent a letter to Deloitte explaining that there were three fundamental problems with the terms of the audit set forth in the Deloitte letter.  A true and correct copy of that September 12th letter is attached as Exhibit A.

5.    As explained in that letter, the first problem was that Deloitte had made no provision for protecting the confidentiality of Toshiba's financial records.  "[T]o protect such ... confidential information," Toshiba explained, "we need to enter into a non disclosure agreement ('NDA')."  Ex. A ¶ 1.  Second, Toshiba explained, the license agreement does not entitle Deloitte to "all documents requested by you."  Ex. A ¶ 2.  For this reason, Toshiba asked that Deloitte "please provide us with explanations of the reasons why the documents that you requested are ... 'necessary to verify or determine royalties paid or payable under the Agreement' (see the Agreement, article 6.7)."  *Id.*  Third, Toshiba explained that Deloitte was demanding that the audit cover a period longer than that permitted under the license agreement.  Ex. A ¶ 3.

6.    Deloitte responded in an October 5, 2006 letter, a true and correct copy of which I have attached as Exhibit B.  In this letter, Deloitte agreed that a non-disclosure agreement would be appropriate, and enclosed what it described as its "standard" NDA.  Ex. B ¶ 1.  Deloitte also invited Toshiba to suggest changes to this standard NDA.  *Id.*  In addition, Deloitte agreed that it would revise the list of materials it had demanded, stating it would "refine our original request list, dated September 7, 2006, and provide it to you."  Ex. B ¶ 2.  Deloitte also agreed it had misstated the scope of the audit period.  Ex. B ¶ 3.

7.    Toshiba and Deloitte then turned their attention to the terms of the NDA.  Unfortunately, after the initial progress achieved in Deloitte's October 5th letter, the discussions with Deloitte moved very slowly.  At all times during the negotiations over the NDA and the other terms of the audit, Toshiba negotiated in good faith in an effort to have the audit completed promptly and in accordance with Section 6.7 of the license agreement.  However, Deloitte kept insisting upon rights very different from those provided by the license agreement.

8.      For example, at one point very late during the discussions over the NDA, Deloitte amended its own standard NDA to permit Deloitte to disclose Toshiba's confidential financial information to Discovision, in direct violation of the requirements of the license agreement. Specifically, in a version of the NDA attached to an email dated March 1, 2007, Deloitte added a provision stating:  "In addition, it is understood and agreed that Deloitte FAS may disclose Confidential Information to the Client [Discovision]." I have attached a true and correct copy of the email, with the enclosed NDA, as Exhibit C.

9.      Toshiba immediately objected to this change in an email dated March 9, 2007 because it clearly violated the license agreement.  As Toshiba explained in the email, Section 6.7 of the license agreement states that the auditor will be "instructed to report to DVA only the amount of royalties due and payable." Despite this, Deloitte was demanding the right to show all of Toshiba's confidential information to Discovision. I have attached a true and correct copy of the March 9th email as Exhibit D.

10.     Over the next several months, the negotiations with Deloitte became more and more difficult, and Toshiba became more and more frustrated with Deloitte's negotiation tactics. Toshiba expressed its frustration to Deloitte on many occassions, including in emails dated October 4, 2007 and December 12, 2007. I have attached true and correct copies of these emails as Exhibits E and F.

11.     Eventually, in December 2007, responsibility for the negotiations was transferred from Deloitte's New York office to Deloitte's Tokyo office. We immediately made progress in our negotiations with Deloitte's Tokyo office, and, by mid-February 2008, we had reached an agreement with Deloitte regarding the NDA.

12.     Toshiba and Deloitte then turned to the scope of the audit.  These discussions were necessary because Deloitte's September 7, 2006 letter listed documents that were not relevant to the audit. (For example, Paragraph 1 of the September 7th letter demanded associated descriptions of technologies and/or processes.  These descriptions are not relevant to the audit,

since the license granted under the license agreement is not on "if used" basis, and Deloitte and Discovision have never explained why they believe these documents to be relevant.)

13.    Similarly, Paragraph 12 of the letter demands "[a]ccess to all accounting records, including but not limited to, accounts receivable and aging reports." This demand is too board since it is not limited to records relating to the licensed products. Toshiba's accounting records for non-licensed products are not relevant to the audit, and Deloitte and Discovision have never explained why they believe these documents to be relevant.

14.    Paragraph 13 of the September 7th letter demands "access to all manufacturing facilities and personnel, including but not limited to, all Toshiba affiliates and subsidiaries." Toshiba objects to this demand because the license agreement does not provide for access to manufacturing facilities and personnel of Toshiba, or of Toshiba's affiliates and subsidiaries.

15.    Paragraph 14 of the September 7th letter demands a right to interview Toshiba's "[k]ey personnel." Toshiba objects to this demand because the license agreement does not provide for interviews with Toshiba personnel.

16.    As mentioned above, Deloitte agreed in its October 5, 2006 letter to revisit the list of materials it wanted for the audit. Those discussions did in fact begin between Toshiba and Deloitte's Tokyo office shortly after the signing of the NDA. Toshiba believed these discussions were resulting in significant progress. However, while these discussions were still ongoing, Discovision filed this lawsuit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 23 day of June, 2008, in Tokyo, Japan.

Name.
[Akira Takei]

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on June 23, 2008, he caused a copy of the foregoing Declaration of Akira Takei in Opposition to Discovision Associates' Motion for Partial Summary Judgment to be served on Plaintiff's counsel listed below by filing a copy with the CM/ECF system.

James B. Kobak, Jr.
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004

William T. Bisset
HUGHES HUBBARD & REED LLP
350 South Grand Avenue, 36th Floor
Los Angeles, CA 90071-34442

*/s/ Paul A. Stewart*
Paul A. Stewart

[5539916]
5562050
062308

-5-

**EXHIBIT A**

# TOSHIBA

TOSHIBA CORPORATION

Intellectual Property Division

1-1,SHIBAURA 1-CHOME, MINATO-KU TOKYO 105-8001,JAPAN
PHONE:    81-3-3457-2508
FACSIMILE: 81-3-5444-9213

Via Facsimile (+1-212-653-4884)

September 12, 2006
Mr. Dale Tarzia
Deloitte Financial Advisory Services LLP
Two World Financial Center
New York, New York 10281
U.S.A.

<u>Re : Discovision Associates ("DVA") – Toshiba Corporation ("Toshiba") Matter</u>

Dear Mr. Tarzia:

As we wrote in our letter dated September 8, 2006 with regard to the above referenced matter, we have reviewed your letters. As a result, please be informed that we have found a few issues to be resolved before you start to examine the records for certain accounting periods. The issues are as follows;

### (1) Maintaining confidentiality of our confidential information

In the course of responding to the document requests that we have received from you, we expect to provide you with our confidential information. Thus, to protect such the confidential information, we need to enter into a non disclosure agreement   ("NDA").

### (2) Procedure / Process of an audit

The license agreement between DVA and Toshiba dated March 31, 2003 does not talk about any obligation that we have to provide you with all documents requested by you. In a normal audit from our experience, first, you and we discuss and authorize what kind of documents should be disclosed, and then an auditor comes to our facility to view such the documents. For the reason, we feel something different about this time's your request. Therefore, we would like you to kindly clarify the overall procedure and process of the audit in advance. In addition, please provide us with explanations of the reasons why the documents that you requested are applicable to "necessary to verify or determine royalties paid or payable under the Agreement" (see the Agreement, article 6.7).

### (3) Accounting periods to be audit

According to the article 6.7 in the agreement, "if no request for examination of such records for any particular accounting period has been made by DVA within three (3) years after the end of said period, the right to examine such records for said period, and the obligation to keep such records for said period, will terminate." Nevertheless, the letter from DVA dated August 15, 2006 talks that "[t]he audit will cover all royalty reporting periods from period ending June 30, 2003 through the period ending March 31, 2006". Further, your letter dated September 7, 2006 talks that "please provide the following with respect to the sale of all products as defined in the Agreement (the "Licensed Products") for the period January 1, 2003 through March 31, 2006 (the "Period")". Please make sure that the accounting periods that you are talking include terminated period, and correct your request in accordance with DVA's right described in the Agreement.

By the way, please be informed that the contact of Toshiba in the audit is the following person, Mr. Akira Takei. For the reason, we would appreciate it if you could send all

**TOSHIBA**

TOSHIBA CORPORATION

future correspondences with regard to this matter to Mr. Takei.

If you have any questions , please let us know.

[Contact]
Mr. Akira Takei.
General Manager
Intellectual Property Division
Toshiba Corporation
Digital Media Network Company

Fax #: +81-3-5444-9439
(The mailing address is the same as Mr. Toda)

With best regards,

*for*

Tsuneo Toda
Senior Manager
Licensing & Contracts Department
Intellectual Property Division
Toshiba Corporation

CC: Mr. Akira Takei (Toshiba)

EXHIBIT A Page 2 of 2

# EXHIBIT B

# Deloitte.

Deloitte Financial Advisory
Services LLP
Two World Financial Center
New York, NY 10281
USA

Tel: (212) 436-2000
Fax: (212) 653-6000
www.deloitte.com

October 5, 2006

Mr. Akira Takei
General Manager
Intellectual Property Division
Toshiba Corporation
Digital Media Network Company
1-1, Shibaura, 1-chome
Minato-ku, Tokyo 105-8001
Japan

Re:     Discovision Associates ("DVA") – Toshiba Corporation ("Toshiba") Matter

Dear Takei-san:

We are in receipt of the letter, dated September 12, 2006, from Toda-san and have provided our responses
to your requests below.

1.  We would prefer to use our standard Non-disclosure Agreement ("NDA"), which I have attached
    for your review. Please provide your comments and/or redlined changes and forward a copy to
    us.

2.  Prior to discussing our procedures we need to understand the availability of documentation that
    Toshiba maintains to support the royalty statements submitted to DVA. After this discussion we
    will be able to refine our original request list, dated September 7, 2006, and provide it to you. In
    addition, upon receipt of our request list we will then discuss with you our approach, procedures
    and tentative dates for our fieldwork.

3.  We re-read the license agreement and agree that the audit period should be from the period
    ending June 30, 2003 through March 31, 2006.

Sincerely,

Dale Tarzia

cc:    Dennis Fischel (DVA)
       Mark Stehr (Deloitte FAS)
       David Amendola (Deloitte FAS)

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement"), effective as of September 5, 2006, is entered into between Toshiba Corporation (the "Company") and DELOITTE FINANCIAL ADVISORY SERVICES LLP ("Deloitte FAS").

WHEREAS, Deloitte FAS has been engaged to perform certain services (the "Services") for Discovision Associates (the "Client"); and

WHEREAS, in connection with the provision of such Services, the Company may disclose to Deloitte FAS certain information which the Company considers to be confidential, proprietary or non-public business information or trade secrets of the Company (the "Confidential Information"); and

WHEREAS, the Company desires for Deloitte FAS to maintain the confidentiality of any Confidential Information disclosed by the Company to Deloitte FAS, and Deloitte FAS desires to maintain the confidentiality of such Confidential Information, in each case on the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Company and Deloitte FAS hereby agree as follows:

1. All Confidential Information shall be prominently labeled "Confidential" in writing by the Company before Deloitte FAS is furnished such Confidential Information hereunder, and Deloitte FAS shall protect the confidentiality of the Confidential Information from third parties by exercising at least the same degree of care as Deloitte FAS employs in maintaining the confidentiality of its own confidential, proprietary or non-public information or trade secrets, but in no event less than a reasonable degree of care. Notwithstanding anything to the contrary in this Agreement, it is understood and agreed that Deloitte FAS may disclose Confidential Information to the Client to explain (i) the methodologies being used by the Company with respect to its calculation of royalties under the patent licensing agreement between the Company and the Client dated March 31, 2005 (the "Licensing Agreement") and/or (ii) any findings from the Engagement relating to whether the Company has under reported royalties.

2. Any information not easily marked, including information which may be orally disclosed, shall, within three (3) business days of its disclosure hereunder, be summarized in writing and designated Confidential Information in writing by the Company to Deloitte FAS.

3. The Company shall identify as "Confidential" in accordance with paragraphs (1) and (2) above, only information which in good faith it believes to be confidential, proprietary or non-public business information or trade secrets of the Company.

4. Confidential Information shall not include any information that (a) is required to be disclosed by Deloitte FAS by any law, regulation, judicial or administrative process, or is disclosed by Deloitte FAS in accordance with applicable professional standards or in connection

**EXHIBIT B Page 2 of 3**

with litigation pertaining to this Agreement or the Services, (b) has otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte FAS in breach hereof, (c) is disclosed by the Company to a third party without substantially the same restrictions as set forth herein, (d) becomes available to Deloitte FAS on a nonconfidential basis from a source other than the Company which Deloitte FAS believes is not prohibited from disclosing such information to Deloitte FAS by obligation to the Company, (e) is known by Deloitte FAS prior to its receipt from the Company hereunder without any obligation of confidentiality with respect thereto, or (f) is developed by Deloitte FAS independently of any disclosures made by the Company to Deloitte FAS of such information hereunder.

5. Deloitte FAS agrees that Confidential Information disclosed hereunder to Deloitte FAS by the Company shall be used by Deloitte FAS solely in connection with the provision of the Services and will not be provided to third parties by Deloitte FAS, except as otherwise provided herein or, in connection with the provision of the Services, to affiliates or related entities of Deloitte FAS that agree to be bound by the terms hereof.

6. In no event shall Deloitte FAS, its affiliates or related entities, be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this Agreement (whether in contract, statute, tort (such as negligence), or otherwise).

7. The obligations set forth herein with respect to Confidential Information shall continue in full force and effect for a period of three (3) years from the effective date of this Agreement.

8. Neither the Company nor Deloitte FAS may assign, transfer or delegate any of its rights hereunder (including, without limitation, interests or claims relating to this Agreement) without the prior written consent of the other party.

9. DELOITTE FAS AND THE COMPANY HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT (SUCH AS NEGLIGENCE), OR OTHERWISE) RELATING TO THIS AGREEMENT.

10. This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to its choice of law principles).

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives effective as of the date first set forth above.

TOSHIBA CORPORATION

By:_____
Name:_____
Title:_____

DELOITTE FINANCIAL ADVISORY SERVICES LLP

By:_____
Name:_____
Title:_____

**EXHIBIT C**

Page 1 of 2

**From:** takeshi.tamashiro@dx.toshiba.co.jp
**Sent:** Monday, May 19, 2008 10:56 PM
**To:** hiroko, yuriko
**Subject:** [FW/Confidential and Privileged-2]     FW: DVA-Toshiba Matter

**Attachments:** NDA for Toshiba_DTFAS Response_Cmt.doc

----- 転送者: takeshi tamashiro/hdq/toshiba 転送日: 2008/05/20 14:54 -----

| | |
|---|---|
| **"takei, akira "** <akira.takei@toshiba.co.jp> 2007/03/01 09:20 | 宛先: "mukuge, masatsugu " <masatsugu.mukuge@toshiba.co.jp>, "kumagai, hideo " <hideo.kumagai@toshiba.co.jp> cc: <takeshi.tamashiro@toshiba.co.jp>, tsuneo toda/hdq/toshiba@toshiba, <yuji.uchigasaki@toshiba.co.jp> 件名: FW: DVA-Toshiba Matter |

未だ、内容チェックしていませんが、Deloitteからカウンタ案がきましたので、取り合えず転送しておきます。

武井

**From:** Amendola, David (US - New York) [mailto:daamendola@deloitte.com]
**Sent:** Thursday, March 01, 2007 4:09 AM
**To:** takei, akira
**Cc:** Tarzia, Dale (US - New York)
**Subject:** DVA-Toshiba Matter

Takei-san,

We received your comments on our Non-Disclosure Agreement ("NDA"), which we sent to you on October 5, 2006, that was included in your fax dated February 16, 2007. We have read through your comments on the NDA and noted that some changes are acceptable and other are not. Therefore, we have included the attached file that contains a "track change version" of your comments and our comments. If these changes are acceptable to you please confirm via email. If you have any questions please let me know.

Regards,

**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center

EXHIBIT C Page 1 of 5

New York, New York 10281-1414

    <<NDA for Toshiba_DTFAS Response_Cmt.doc>>

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law.  If you are not the intended recipient, you should delete this message.

Any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited. [v.E.1]

*(添付ファイル: NDA for Toshiba_DTFAS Response_Cmt.doc)*

EXHIBIT C Page 2 of 5

CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement"), effective as of ~~September 5, 2006~~, is entered into between Toshiba Corporation (the "Company") and DELOITTE FINANCIAL ADVISORY SERVICES LLP ("Deloitte FAS").

WHEREAS, Deloitte FAS has been engaged to perform certain services ~~(the "Services")~~ for Discovision Associates (the "Client") as described in the ~~pursuant to the~~ Non-Exclusive Limited Worldwide Patent License Agreement for Playback and Recording Products (Prepaid-XP-WW-031403) effective as of March 31, 2003 between the Company and the Client (the "Services")[DA1]; and

WHEREAS, in connection with the provision of such Services, the Company may disclose to Deloitte FAS certain information which the Company considers to be confidential, proprietary or non-~~public~~ly available business information, including, but not limited to, the information relating to organization, personnel, manufacturing, engineering, development, marketing, sales, logistics, accounting, or finances, [DA2]or trade secrets of the Company (the "Confidential Information"); and

WHEREAS, the Company desires for Deloitte FAS to maintain the confidentiality of any Confidential Information disclosed by the Company to Deloitte FAS, and Deloitte FAS desires to maintain the confidentiality of such Confidential Information, in each case on the terms and conditions set forth herein.

NOW, THEREFORE, ~~for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the~~ [DA3]Company and Deloitte FAS hereby agree as follows:

1. All Confidential Information shall be prominently labeled "Confidential" in writing by the Company before Deloitte FAS is furnished such Confidential Information hereunder, and Deloitte FAS shall ~~maintain~~protect the confidentiality of and shall not disclose such ~~the~~ Confidential Information to any~~from~~ third parties[DA4], ~~including, but not limited to, its employees and the Client,~~ by[DA5] exercising at least the same degree of care as Deloitte FAS employs in maintaining the confidentiality of its own confidential, proprietary or non-publicly available information or trade secrets, but in no event less than a reasonable degree of care. Notwithstanding the foregoing, Deloitte FAS may disclose such Confidential Information only to its employees who have a need to know for performing the Service[DA6] ~~and agree in writing to be bound by the terms of this Agreement prior to such disclosure.~~[DA7]. ~~–~~Deloitte FAS may also disclose such Confidential Information to the extent required by law, provided that Deloitte FAS shall give the Company prompt notice in advance to allow the Company a reasonable opportunity to obtain an appropriate protective order and shall use all reasonable effort to obtain written assurance that confidential treatment as specified herein will be accorded to such Confidential Information.[DA8]~~anything to the contrary in this Agreement,~~ In addition, i~~i~~t is understood and agreed that Deloitte FAS may disclose Confidential Information to the Client to explain (i) the methodologies being used by the Company with respect to its calculation of royalties under the patent licensing agreement between the Company and the Client dated March 31, 2005 (the

EXHIBIT C Page 3 of 5

"Licensing Agreement") and/or (ii) any findings from the Engagement relating to whether the Company has under reported royalties. [DA9]

2.  Any information not easily marked, including information which may be orally disclosed, shall, within five ten three (3 5 10) business days of its disclosure hereunder, be summarized in writing and designated Confidential Information in writing by the Company to Deloitte FAS and whereby, shall constitute Confidential Information. [DA11]

3.  The Company shall identify as "Confidential" in accordance with paragraphs (1) and (2) above, only information which in good faith it believes to be confidential, proprietary or non-publicly available business information or trade secrets of the Company.

4.  Confidential Information shall not include any information that (a) is required to be disclosed by Deloitte FAS by any law, regulation, judicial or administrative process, or is disclosed by Deloitte FAS in accordance with applicable professional standards or in connection with litigation pertaining to this Agreement or the Services, (b) has otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte FAS in breach hereof, (c) is disclosed by the Company to a third party without substantially the same restrictions as set forth herein, (d) becomes available to Deloitte FAS on a nonconfidential basis from a source other than the Company which Deloitte FAS reasonably believes is not prohibited from disclosing such information to Deloitte FAS by obligation to the Company, (e) is known by Deloitte FAS prior to its receipt from the Company hereunder without any obligation of confidentiality with respect thereto, or (f) is developed by Deloitte FAS independently of any disclosures made by the Company to Deloitte FAS of such information hereunder.

[DA12]

5.  Deloitte FAS agrees that Confidential Information disclosed hereunder to Deloitte FAS by the Company shall be used by Deloitte FAS solely in connection with the provision of the Services and will not be disclosed to any provided to th [DA13] ird parties, including, but not limited to, the Client, by Deloitte FAS, except as otherwise provided herein, and Deloitte FAS shall rport to the Client only the amount of royalties due and payable or, in connection with the provision of the Services, to affiliates or related entities of Deloitte FAS that agree to be bound by the terms hereof. [DA14]

6.  Deloitte shall be entitled to retain no more than one copy of confidential information for its work papers.  In addition, Deloitte FAS agrees not to make any additional copies of Confidential Information without prior written consent of the Company.  All Confidential Information shall be and shall remain the property of the Company including any copies thereof.  Upon request of the Company, Deloitte FAS shall promptly return to the Company all Confidential Information f except for the one copy described herein. f. [DA15] In no event shall Deloitte FAS, its affiliates or related entities, be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this Agreement (whether in contract, statute, tort (such as negligence), or otherwise). [DA16].

7.  Deloitte FAS acknowledges that compliance with the provisions of this Agreement is necessary for protecting the proprietary interests of the Company and any unauthorized use or

EXHIBIT C Page 4 of 5

disclosure to any third party, including without limitation the Client, [DA17] in breach of this Agreement will result in irreparable and continuing damages to the Company. Deloitte FAS agrees that, in the event of such breach, the Company will be authorized and entitled to obtain immediate injunctive relief and any other rights or remedies to which the Company may be entitled. In the event that a court of competent jurisdiction decides that Deloitte FAS has materially breached this Agreement, Deloitte FAS and/or the Client shall reimburse the Company all the cost of any court proceedings and attorney's fees and also any and all fees and expenses for the Service, if borne by the Company. The obligations set forth herein with respect to Confidential Information shall continue in full force and effect for a period of five three (5 3) years from the effective date of this Agreement. [DA18]

8. Neither the Company nor Deloitte FAS may assign or otherwise, transfer any of its right hereunder or delegate any of its duties or obligations rights hereunder (including, without limitation, interests or claims relating to this Agreement) without the prior written consent of the [DA19] other party.

9. Deloitte FAS shall comply with any and all applicable export and import laws and regulations. DELOITTE FAS AND THE COMPANY HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT (SUCH AS NEGLIGENCE), OR OTHERWISE) RELATING TO THIS AGREEMENT. [DA20]

10. 10. This Agreement shall be governed by and construed in accordance with the laws of
the State of New York (without giving effect to its choice of law principles).

11. This Agreement supersedes all agreements, written or orally, between Deloitte FAS and the Company relating to the subject matter of this Agreement and shall not be modified, changed or discharged, in whole or in part, except by an agreement in writing signed by Deloitte FAS and the Company. [DA21]

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives effective as of the date first set forth above.

TOSHIBA CORPORATION

DELOITTE FINANCIAL ADVISORY SERVICES LLP

By:_____
Name:_____
Title:_____

By:_____
Name:_____
Title:_____

EXHIBIT C Page 5 of 5

**EXHIBIT D**

**From:** takeshi.tamashiro@dx.toshiba.co.jp
**Sent:** Monday, May 19, 2008 10:57 PM
**To:** hiroko, yuriko
**Subject:** [FW/Confidential and Privileged-3]     RE: DVA-Toshiba Matter (Confidential)

----- 転送者: takeshi tamashiro/hdq/toshiba 転送日: 2008/05/20 14:56 -----

| | |
|---|---|
| "takei, akira "<br>&lt;akira.takei@toshiba.co.jp&gt;<br><br>2007/03/09 09:14 | 宛先: "Amendola, David \(US - New York\)"<br>&lt;daamendola@deloitte.com&gt;<br>cc: "Tarzia, Dale \(US - New York\)"<br>&lt;dtarzia@DELOITTE.com&gt;, "mukuge, masatsugu<br>" &lt;masatsugu.mukuge@toshiba.co.jp&gt;, "kumagai,<br>hideo " &lt;hideo.kumagai@toshiba.co.jp&gt;,<br>&lt;victor.schubert@discovision.com&gt;<br>件名: RE: DVA-Toshiba Matter (Confidential) |

Dear Mr. Amendola:

We have received your e-mail enclosing your counter proposal of the Confidential Agreement with your firm. Taking a brief look at the same, we can not understand why you believe we can accept such your proposing language. For example, as clearly specified in Section 6.7 of the Patent License Agreement between Toshiba and DVA, you shall be instructed to report to DVA only the amount of royalties due and payable. No more rights and/or flexibility you can obtain under this Confidential Agreement since your audit services will be rendered pursuant to such Patent License Agreement. Furthermore, why do we have to waive our rights to obtain permissible remedies and relief in case of your breach of this Confidential Agreement ? Sticking to obtain terms and conditions preferable to you only will lead to derogate from the relationship between Toshiba and DVA, your client, and simply delaying on-going negotiation therebetween for possible renewal of such Patent License Agreement.

In any event, we will review carefully your counter proposal and try to provide you with our further counter languages, hopefully by the end of this month, though we are strictly busy this month which is the end of our fiscal year.

Regards,

Akira Takei
Toshiba Corp.

---

**From:** Amendola, David (US - New York) [mailto:daamendola@deloitte.com]
**Sent:** Wednesday, March 07, 2007 1:03 AM
**To:** takei, akira
**Cc:** Tarzia, Dale (US - New York)
**Subject:** RE: DVA-Toshiba Matter

Takei-san,

Please confirm that you received our comments on the Non-Disclosure Agreement that we sent to you on February 28, 2007 and when we can expect to receive your response.

Regards,

**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

---

**From:**  Amendola, David (US - New York)
**Sent:**  Wednesday, February 28, 2007 2:09 PM
**To:**  Akira Takei (akira.takei@toshiba.co.jp)
**Cc:**  Tarzia, Dale (US - New York)
**Subject:**  DVA-Toshiba Matter

Takei-san,

We received your comments on our Non-Disclosure Agreement ("NDA"), which we sent to you on October 5, 2006, that was included in your fax dated February 16, 2007. We have read through your comments on the NDA and noted that some changes are acceptable and other are not. Therefore, we have included the attached file that contains a "track change version" of your comments and our comments. If these changes are acceptable to you please confirm via email. If you have any questions please let me know.

Regards,

**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

<< File: NDA for Toshiba_DTFAS Response_Cmt.doc >>

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law.  If you are not the intended recipient, you should delete this message.

Any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited. [v.E.1]

**EXHIBIT E – PART 1**

**From:** takeshi.tamashiro@dx.toshiba.co.jp
**Sent:** Monday, May 19, 2008 11:04 PM
**To:** hiroko, yuriko
**Subject:** [FW/Confidential and Privileged-8]    RE: DVA-Toshiba Matter (Confidential)

**Attachments:** 05312007 NDA_revised by TSB.doc

----- 転送者: takeshi tamashiro/hdq/toshiba 転送日: 2008/05/20 15:03 -----

| | |
|---|---|
| **"takei, akira"** <akira.takei@toshiba.co.jp> | 宛先: "Amendola, David (US - New York)" <daamendola@deloitte.com> |
| 2007/10/04 22:06 | cc: <takeshi.tamashiro@toshiba.co.jp>, "kumagai, hideo" <hideo.kumagai@toshiba.co.jp>, "mukuge, masatsugu" <masatsugu.mukuge@toshiba.co.jp>, <victor.schubert@discovision.com>, "Tarzia, Dale (US - New York)" <dtarzia@DELOITTE.com> |
| | 件名: RE: DVA-Toshiba Matter (Confidential) |

Dear Mr. Amendola:

Actually, we are not sure what kind of response you are expecting from us. As repeatedly mentioned, our consistent and fundamental position in this regard is that you have no right to inspect our proprietary information/documents except as otherwise specified in Section 6.7 of the Patent License Agreement, effective as of March 31, 2003, between Toshiba and DVA.

Any attempt to expand such your right beyond those specified in the same, such as trying to report/disclose to DVA any other information whatsoever you may obtain from us than the amount of royalties due and payable under such Patent License Agreement, by using and/or creating unclear languages in the Confidential Agreement, inserting such languages thereinto without even identifying the same to us. Due to such your tactics, we have to review all over again the draft thereof on language by language basis every time you revise the same, which we are very much uncomfortable with and for which we can not share our time since we are strictly busy to handle many other litigations and licensing matters.

Should you want to resume our discussion on this outstanding issue, we request you first to confirm your understanding and agreement of the above-mentioned right you may have for your audit service. The attached is a draft of Confidential Agreement, together with our comment, which is slightly modified for clarification from the last version thereof we have previously sent to you. After we receive such your agreement on your audit right, we may consider to proceed with our discussion based on such our draft as attached.

Regards,

Akira Takei
Toshiba Corp.

**From:** Amendola, David (US - New York) [mailto:daamendola@deloitte.com]
**Sent:** Monday, October 01, 2007 9:48 PM
**To:** takei, akira
**Cc:** takeshi.tamashiro@toshiba.co.jp; kumagai, hideo; mukuge, masatsugu;
victor.schubert@discovision.com; Tarzia, Dale (US - New York)
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

Please let us know when we can expect to receive your response to our comments on the CDA we sent to
you on June 22.

Regards,


**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

**From:** Amendola, David (US - New York)
**Sent:** Monday, August 20, 2007 9:38 AM
**To:** 'takei, akira'
**Cc:** 'takeshi.tamashiro@toshiba.co.jp'; 'kumagai, hideo'; 'mukuge, masatsugu';
'victor.schubert@discovision.com'; Tarzia, Dale (US - New York)
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

We sent you our most recent comments on the CDA on June 22 and we have not received a response from you since.  Please let us know when we can expect to receive a response.

Regards,


**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

---

**From:** Amendola, David (US - New York)
**Sent:** Wednesday, July 25, 2007 11:40 AM
**To:** 'takei, akira'
**Cc:** 'takeshi.tamashiro@toshiba.co.jp'; 'kumagai, hideo'; 'mukuge, masatsugu'; 'victor.schubert@discovision.com'; Tarzia, Dale (US - New York)
**Subject:** FW: DVA-Toshiba Matter (Confidential)

Takei-san,

Please let us know that you have received the email below, dated June 22, with our latest comments on the CDA.  In addition, let us know when we should expect to receive a response from you on our comments.  If you agree with all of the changes please let us know so we can finalize this and move forward.

Regards,


**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

---

**From:** Amendola, David (US - New York)
**Sent:** Friday, June 22, 2007 2:05 PM

**To:** 'takei, akira'
**Cc:** Tarzia, Dale (US - New York); mukuge, masatsugu; kumagai, hideo; victor.schubert@discovision.com; takeshi.tamashiro@toshiba.co.jp
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

We have reviewed your comments on the Confidentiality Agreement. I have attached to this email the file containing our response to your changes. I have included our comments in a "Comment Box" that have the initials DA in them. Please let me know if you have any questions.

Regards,


**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414


**From:** takei, akira [mailto:akira.takei@toshiba.co.jp]
**Sent:** Tuesday, June 19, 2007 5:20 AM
**To:** Amendola, David (US - New York)
**Cc:** Tarzia, Dale (US - New York); mukuge, masatsugu; kumagai, hideo; victor.schubert@discovision.com; takeshi.tamashiro@toshiba.co.jp
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Dear Mr. Amendola:

The attached is our revised version of Confidential Agreement, with our comment inserted thereinto with ### mark. We are very much uncomfortable with your negotiation manner, changing languages thereof without any remarks.

Regards,

Akira Takei
Toshiba Corp.


**From:** Amendola, David (US - New York) [mailto:daamendola@deloitte.com]

**Sent:** Thursday, May 24, 2007 4:19 AM
**To:** takei, akira
**Cc:** Tarzia, Dale (US - New York); mukuge, masatsugu; kumagai, hideo;
victor.schubert@discovision.com; takeshi.tamashiro@toshiba.co.jp
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

We reviewed the comments that you had and I have attached a copy that includes our comments.  I have accepted all the changes that we both have made and do not have comments on.  Please let me know if you have any questions.

Thanks,


**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414


**From:** takei, akira [mailto:akira.takei@toshiba.co.jp]
**Sent:** Friday, May 11, 2007 6:58 AM
**To:** Amendola, David (US - New York)
**Cc:** Tarzia, Dale (US - New York); mukuge, masatsugu; kumagai, hideo;
victor.schubert@discovision.com; takeshi.tamashiro@toshiba.co.jp
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Dear Mr. Amendola:

Due to several urgent issues to be handled with priority and also our Japanese Golden Week holiday, our response in this regard was delayed.  The attached is our counter draft, in red version, of the Confidential Agreement, with our comments inserted thereinto with ### mark. Please review the same and let us know whether it is acceptable for you.

Best regards,

Akira Takei
Toshiba Corp.


**From:** Amendola, David (US - New York) [mailto:daamendola@deloitte.com]


**EXHIBIT E Page 5 of 12**

**Sent:** Friday, April 06, 2007 1:07 AM
**To:** takei, akira
**Cc:** Tarzia, Dale (US - New York); mukuge, masatsugu ; kumagai, hideo ;
victor.schubert@discovision.com
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

Please let me know what the status is of your review of the Non-Disclosure Agreement we provided to
you on February 28, 2007 and when we can expect to receive your response.

Regards,

**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

**From:** takei, akira [mailto:akira.takei@toshiba.co.jp]
**Sent:** Thursday, March 08, 2007 7:14 PM
**To:** Amendola, David (US - New York)
**Cc:** Tarzia, Dale (US - New York); mukuge, masatsugu ; kumagai, hideo ;
victor.schubert@discovision.com
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Dear Mr. Amendola:

We have received your e-mail enclosing your counter proposal of the Confidential Agreement
with your firm.  Taking a brief look at the same, we can not understand why you believe we
can accept such your proposing language.  For example, as clearly specified in Section 6.7 of
the Patent License Agreement between Toshiba and DVA, you shall be instructed to report to
DVA only the amount of royalties due and payable.  No more rights and/or flexibility you
can obtain under this Confidential Agreement since your audit services will be rendered
pursuant to such Patent License Agreement.  Furthermore, why do we have to waive our
rights to obtain permissible remedies and relief in case of your breach of this Confidential
Agreement ?  Sticking to obtain terms and conditions preferable to you only will lead to
derogate from the relationship between Toshiba and DVA, your client, and simply delaying
on-going negotiation therebetween for possible renewal of such Patent License Agreement.

In any event, we will review carefully your counter proposal and try to provide you with our
further counter languages, hopefully by the end of this month, though we are strictly busy this
month which is the end of our fiscal year.

Regards,

Akira Takei
Toshiba Corp.

---

**From:** Amendola, David (US - New York) [mailto:daamendola@deloitte.com]
**Sent:** Wednesday, March 07, 2007 1:03 AM
**To:** takei, akira
**Cc:** Tarzia, Dale (US - New York)
**Subject:** RE: DVA-Toshiba Matter

Takei-san,

Please confirm that you received our comments on the Non-Disclosure Agreement that we sent to you on February 28, 2007 and when we can expect to receive your response.

Regards,

**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

---

**From:** Amendola, David (US - New York)
**Sent:** Wednesday, February 28, 2007 2:09 PM
**To:** Akira Takei (akira.takei@toshiba.co.jp)
**Cc:** Tarzia, Dale (US - New York)
**Subject:** DVA-Toshiba Matter

Takei-san,

We received your comments on our Non-Disclosure Agreement ("NDA"), which we sent to you on October 5, 2006, that was included in your fax dated February 16, 2007. We have read through your comments on the NDA and noted that some changes are acceptable and other are not. Therefore, we have included the attached file that contains a "track change version" of your comments and our comments. If these changes are acceptable to you please confirm via email. If you have any questions please let me know.

Regards,

**David Amendola**

Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

    &lt;&lt; File: NDA for Toshiba_DTFAS Response_Cmt.doc &gt;&gt;

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law.  If you are not the intended recipient, you should delete this message.

Any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited. [v.E.1]

*(添付ファイル: 05312007 NDA_revised by TSB.doc)*

CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement"), effective as of XX, 2007 ~~September 5, 2006~~, is entered into between Toshiba Corporation (the "Company") and DELOITTE FINANCIAL ADVISORY SERVICES LLP ("Deloitte FAS").

WHEREAS, Deloitte FAS has been engaged to perform certain services ~~(the "Services")~~ for Discovision Associates (the "Client") pursuant to ~~pursuant toas described in the envisioned under~~ the [DA1]Non-Exclusive Limited Worldwide Patent License Agreement for Playback and Recording Products (Prepaid-XP-WW-031403) effective as of March 31, 2003 between the Company and the Client (the "Services"); and

### Your service should be rendered pursuant to Section 6.7 of the Patent License Agreement mentioned above, which does not mean you would agree to all other ~~the~~ terms and conditions thereof ~~within the License Agreement~~. Your explanation cannot be understandable and persuasive. ###

~~### Your examination of our records is permitted only under Section 6.7 of the License Agreement at issue between your client and us and you have no further right beyond the same and so, all your audit service for your client should be rendered pursuant thereto. We can not understand the reason why you can not accept the word "pursuant to" but can accept the word "as described in". ###~~

WHEREAS, in connection with the provision of such Services, the Company may disclose to Deloitte FAS certain information which the Company considers to be confidential, proprietary or non-publicly available business information, including, but not limited to, the information relating to organization, personnel, manufacturing, engineering, development, marketing, sales, logistics, accounting, or finances, or trade secrets of the Company (the "Confidential Information"); and

WHEREAS, the Company desires for Deloitte FAS to maintain the confidentiality of any Confidential Information disclosed by the Company to Deloitte FAS, and Deloitte FAS desires to maintain the confidentiality of such Confidential Information, in each case on the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Company and Deloitte FAS hereby agree as follows:

1. All Confidential Information shall be prominently labeled "Confidential" in writing by the Company before Deloitte FAS is furnished with such Confidential Information hereunder, and Deloitte FAS shall maintain the confidentiality of such Confidential Information and shall not disclose the same ~~such Confidential Information~~ to any third parties, including, but limited to, its employees and the Client, by exercising at least the same degree of care as Deloitte FAS employs in maintaining the confidentiality of its own confidential, proprietary or non-publicly available information or trade secrets, but in no event less than a reasonable degree of care.

Notwithstanding the foregoing, Deloitte FAS may disclose such Confidential Information only to its ~~partners, principals, affiliates,~~ employees ~~, affiliates or related entities~~ who have a need to know for performing the Service.

### We found that you inserted "partners, principals, affiliates…" without any remarks. We are very much uncomfortable with such your negotiation manner. ###

 – Deloitte FAS may also disclose such Confidential Information to the extent required by applicable law ~~, rule, regulation,~~ ~~or~~ ~~judicial or administrative process, or in connection with lawsuit pertaining to this Agreement or the Service~~ ~~applicable professional standards~~[DA2]; ~~in connection with lawsuit pertaining to this Agreement or the Service,~~ provided that ~~, to the extent permitted by law, rule or regulation,~~ – Deloitte FAS shall give the Company prompt notice in advance to allow the Company a reasonable opportunity to obtain an appropriate protective order or other restriction and shall use all ~~all~~ reasonable effort to obtain ~~written~~ written assurance that confidential treatment as specified herein ~~as specified herein~~ will be accorded to such Confidential Information to be so disclosed. ~~anything to the contrary in this Agreement, Additionally, Deloitte FAS may disclose Confidential Information in connection litigation between the parties related to this Agreement or the Services, provided that Deloitte FAS uses reasonable efforts to obtain confidential treatment of any such information so disclosed.~~

### Your inserted word "professional standards" is very unclear and inappropriate. Other modifications you made are also not acceptable since they would unreasonably weaken the protection of Confidential Information to be provided herein. ###
~~### We put the language of " judicial or administrative process, or in connection with lawsuit pertaining to this Agreement or the Service" hereinto and delete your proposing subparagraph (a) of Section 4. ###~~

2.   Any information not easily marked, including information which may be orally disclosed, shall, within five (5) business days of its disclosure hereunder, be summarized in writing and designated Confidential Information in writing by the Company to Deloitte FAS and whereby, shall constitute Confidential Information.

3.   The Company shall identify as "Confidential" in accordance with Sections 1 and 2 above, only information which in good faith it believes to be confidential, proprietary or non-publicly available business information or trade secrets of the Company.

4.   Confidential Information shall not include any information that (a) has otherwise become publicly available other than as the result of a disclosure by Deloitte FAS in breach hereof, (b) is disclosed by the Company to a third party without substantially the same restrictions as set forth herein, (c) becomes available to Deloitte FAS on a nonconfidential basis from a source other than the Company which Deloitte FAS reasonably believes is not prohibited from disclosing ~~such information to Deloitte FAS by~~ by its confidential obligation to the Company specified herein, (d) is known by Deloitte FAS prior to its receipt from the Company hereunder without any obligation of confidentiality with respect thereto, or (e) is developed by

**EXHIBIT E Page 10 of 12**

# EXHIBIT E – PART 2

Deloitte FAS independently of any ~~disclosures~~disclosures made made by the Company to Deloitte FAS ~~of such information~~ hereunder.

5. Deloitte FAS agrees that Confidential Information disclosed hereunder to Deloitte FAS by the Company shall be used by Deloitte FAS solely for~~in connection with the provision of~~ the Services and will not be disclosed to any third parties, including, but not limited to, the Client, by Deloitte FAS, except as otherwise provided herein, and Deloitte FAS shall report to the Client only the amount of royalties due and payable under the aforementioned Patent License Agreement.

6. Deloitte FAS shall be entitled to make retain no more than one copy of Confidential Information to the extent that such copying is essential for rendering the Service and Deloitte FAS clearly specifies in writing such Confidential Information to be copied, and obtains prior written consent thereto by the Company. Such consent will not be unreasonably withheld by the Company and Deloitte FAS agrees not to make any additional copies of such Confidential Information without prior written consent of the Company. All Confidential Information shall be and shall remain the property of the Company including any copies thereof. Upon request of the Company, Deloitte FAS shall promptly return to the Company all Confidential Information along with all copies thereof so made ~~thereof~~.

### We also found here that you inserted "without prior written consent of the Company" in sixth line without any remarks. We are very much uncomfortable with such your negotiation manner. However, we may consider to accept such modification if you will not use any further such tactics for our negotiation. ###

7. Deloitte FAS acknowledges that ~~it has been informed that~~ compliance with the provisions of this Agreement is necessary for protecting the proprietary interests of the Company and any unauthorized use or disclosure to any third party, including without limitation the Client, in breach of this Agreement may~~will~~ result in irreparable and continuing damages to the Company. Deloitte FAS agrees that, in the event of such breach, the Company will be ~~authorized and~~ entitled to seek ~~obtain~~ immediate injunctive relief and any other rights or remedies to which the Company may be entitled. ~~In the event that a court of competent jurisdiction decides that Deloitte FAS has materially breached this Agreement, Deloitte FAS and/or the Client shall reimburse the Company all the cost of any court proceedings and attorney's fees and also any and all fees and expenses for the Service, if borne by the Company.~~[DA3]~~In the event that a court of competent jurisdiction decides that Deloitte FAS has materially breached this Agreement, Deloitte FAS and/or the Client shall reimburse the Company all the cost of any court proceedings and attorney's fees and also any and all fees and expenses for the Service, if borne by the Company.~~ The obligations set forth herein with respect to Confidential Information shall continue in full force and effect for a period of ~~five~~eight ~~three~~ (8)~~53~~) ~~years~~ years from the effective date of this Agreement.

### We may accept 8 years your ~~limitation you are proposing~~of 8 years. However, the remedies and relief provided in this section are essential conditions of this Agreement and we cannot waive them so that we could appropriately protect our proprietary information. ###

~~### We will never waive any of our rights to obtain permissible remedies and relief in case of your breach of this Agreement. Your confidential obligation hereunder shall be in force and effect forever. If you want to limit the term of such your confidential obligation, however, we propose ten (10) years therefor so that we can protect our Confidential Information appropriately. ###~~

8. Neither the Company nor Deloitte FAS may assign or otherwise, transfer any of its right hereunder or delegate any of its duties or obligations hereunder (including, without limitation, interests or claims relating to this Agreement) without the prior written consent of the other party.

9. Deloitte FAS shall comply with any and all applicable export and import laws and regulations.

10. This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to its choice of law principles).

11. This Agreement supersedes all agreements, written or orally, between Deloitte FAS and the Company relating to the subject matter of this Agreement and shall not be modified, changed or discharged, in whole or in part, except by an agreement in writing signed by Deloitte FAS and the Company.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives, to be effective as of the date first set forth above.

TOSHIBA CORPORATION                DELOITTE FINANCIAL ADVISORY
                                   SERVICES LLP

By:_____   By:_____
Name:_____   Name:_____
Title:_____   Title:_____

**EXHIBIT F**

**From:** takeshi.tamashiro@dx.toshiba.co.jp
**Sent:** Monday, May 19, 2008 11:09 PM
**To:** hiroko, yuriko
**Subject:** [FW/Confidential and Privileged-13]     RE: DVA-Toshiba Matter (Confidential)

----- 転送者: takeshi tamashiro/hdq/toshiba 転送日: 2008/05/20 15:08 -----

| | |
|---|---|
| "takei, akira"<br>**<akira.takei@toshiba.co.jp>**<br><br>2007/12/12 18:50 | 宛先: "Amendola, David (US - New York)"<br><daamendola@deloitte.com><br>cc: <takeshi.tamashiro@toshiba.co.jp>, "kumagai,<br>hideo" <hideo.kumagai@toshiba.co.jp>, "mukuge,<br>masatsugu" <masatsugu.mukuge@toshiba.co.jp>,<br>"Tarzia, Dale (US - New York)"<br><dtarzia@DELOITTE.com>, "Takahashi, Sayaka<br>(US - New York)" <stakahashi@deloitte.com>,<br><victor.schubert@discovision.com>,<br><dennis.fischel@discovision.com><br>件名: RE: DVA-Toshiba Matter (Confidential) |

Dear Mr. Amendola:

You must totally misunderstand the agreement between Toshiba and DVA regarding this NDA issue, which has been reached during our meeting on Dec. 10 in our headquarters. Actually, we are very much uncomfortable with your negotiation manner to date and so, can not work with you any further on this NDA.  For resolving such our concern and moving forward, DVA has proposed to replace you with other personnel in your Tokyo office so that we can discuss with your Tokyo office personnel only on this NDA and finalize the same. We accepted such DVA's proposal as the pre-condition for further discussions, including a telecon, on this NDA issue.  That is the deal between Toshiba and DVA, having your Tokyo office personnel participate in such further discussions/possible telecon just as a translator is not the deal between Toshiba and DVA in this regard.

Accordingly, we can not set up such telecon and make any further discussions with your firm as long as you remain a person in charge of and/or to be involved in this NDA and possible audit issue based thereon.  (Does DVA instruct you to do so regardless of the above mentioned agreement/deal with us ?)  We, however, do not refuse to discuss with your Tokyo office personnel replaced with you on the schedule for such our telecon with such your Tokyo office personnel only in this regard.


Best regards,

Akira Takei
Toshiba Corp.

**From:** Amendola, David (US - New York) [mailto:daamendola@deloitte.com]
**Sent:** Wednesday, December 12, 2007 4:22 AM

**To:** takei, akira
**Cc:** takeshi.tamashiro@toshiba.co.jp; kumagai, hideo; mukuge, masatsugu; Tarzia, Dale (US - New York); Takahashi, Sayaka (US - New York)
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

I noticed that December 14th for us would be December 15th for you, which is as Saturday. Therefore, please select one of the following two dates and times.

December 19th - 8pm - 9pm New York (December 20th 9am - 10am Japan)
December 20th - 8pm - 9pm New York (December 21st 9am - 10am Japan)

I apologize for the confusion and look forward to speaking with you.

Regards,


**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

---

**From:** Amendola, David (US - New York)
**Sent:** Tuesday, December 11, 2007 12:55 PM
**To:** 'takei, akira'
**Cc:** 'takeshi.tamashiro@toshiba.co.jp'; 'kumagai, hideo'; 'mukuge, masatsugu'; Tarzia, Dale (US - New York); Takahashi, Sayaka (US - New York)
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

We would like to schedule a conference call to discuss the confidentiality agreement between Toshiba and Deloitte FAS. In response to your request we will have a Japanese speaking representative from Deloitte FAS on call. Please let us know if you are available on one of the below dates and times. If you are not available during the below times please provide an alternative date and time for the call. Once we finalize a date and time we will send out the dial-in information for the call. If you have any questions please let us know.

December 14th - 8pm - 9pm New York (9am - 10am Japan)
December 19th - 8pm - 9pm New York (9am - 10am Japan)
December 20th - 8pm - 9pm New York (9am - 10am Japan)

Regards,

**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

---

**From:** Amendola, David (US - New York)
**Sent:** Monday, November 19, 2007 8:49 AM
**To:** 'takei, akira'
**Cc:** 'takeshi.tamashiro@toshiba.co.jp'; 'kumagai, hideo'; 'mukuge, masatsugu';
'victor.schubert@discovision.com'; Tarzia, Dale (US - New York)
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

Please let us know when we can expect to receive your response to our comments on the CDA we sent to you on October 8th.  As mentioned in our previous emailsif you cannot agree with any of our remaining comments please let us know and we will schedule a conference call to discuss.

Regards,

**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

---

**From:** Amendola, David (US - New York)
**Sent:** Monday, October 08, 2007 1:29 PM
**To:** 'takei, akira'
**Cc:** takeshi.tamashiro@toshiba.co.jp; kumagai, hideo; mukuge, masatsugu;
victor.schubert@discovision.com; Tarzia, Dale (US - New York)
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

We have reviewed your proposed changes and have accepted most of them.  Attached is the latest version of the CDA with our remaining comments, which have been highlighted.  If you cannot agree with any of our remaining comments please let us know and we will schedule a conference call for sometime this

week.  In addition, please note that we are ready to start our work next week if the attached CDA is acceptable to Toshiba.

Regards,


**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

---

**From:** takei, akira [mailto:akira.takei@toshiba.co.jp]
**Sent:** Thursday, October 04, 2007 9:06 AM
**To:** Amendola, David (US - New York)
**Cc:** takeshi.tamashiro@toshiba.co.jp; kumagai, hideo; mukuge, masatsugu; victor.schubert@discovision.com; Tarzia, Dale (US - New York)
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Dear Mr. Amendola:

Actually, we are not sure what kind of response you are expecting from us.  As repeatedly mentioned, our consistent and fundamental position in this regard is that you have no right to inspect our proprietary information/documents except as otherwise specified in Section 6.7 of the Patent License Agreement, effective as of March 31, 2003, between Toshiba and DVA.

Any attempt to expand such your right beyond those specified in the same, such as trying to report/disclose to DVA any other information whatsoever you may obtain from us than the amount of royalties due and payable under such Patent License Agreement, by using and/or creating unclear languages in the Confidential Agreement, inserting such languages thereinto without even identifying the same to us.  Due to such your tactics, we have to review all over again the draft thereof on language by language basis every time you revise the same, which we are very much uncomfortable with and for which we can not share our time since we are strictly busy to handle many other litigations and licensing matters.

Should you want to resume our discussion on this outstanding issue, we request you first to confirm your understanding and agreement of the above-mentioned right you may have for your audit service.  The attached is a draft of Confidential Agreement, together with our comment, which is slightly modified for clarification from the last version thereof we have previously sent to you.  After we receive such your agreement on your audit right, we may consider to proceed with our discussion based on such our draft as attached.

Regards,

Akira Takei

Toshiba Corp.

---

**From:** Amendola, David (US - New York) [mailto:daamendola@deloitte.com]
**Sent:** Monday, October 01, 2007 9:48 PM
**To:** takei, akira
**Cc:** takeshi.tamashiro@toshiba.co.jp; kumagai, hideo; mukuge, masatsugu; victor.schubert@discovision.com; Tarzia, Dale (US - New York)
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

Please let us know when we can expect to receive your response to our comments on the CDA we sent to you on June 22.

Regards,


**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

---

**From:** Amendola, David (US - New York)
**Sent:** Monday, August 20, 2007 9:38 AM
**To:** 'takei, akira'

Cc: 'takeshi.tamashiro@toshiba.co.jp'; 'kumagai, hideo'; 'mukuge, masatsugu';
'victor.schubert@discovision.com'; Tarzia, Dale (US - New York)
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

We sent you our most recent comments on the CDA on June 22 and we have not received a response from you since.  Please let us know when we can expect to receive a response.

Regards,


**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

---

**From:** Amendola, David (US - New York)
**Sent:** Wednesday, July 25, 2007 11:40 AM
**To:** 'takei, akira'
**Cc:** 'takeshi.tamashiro@toshiba.co.jp'; 'kumagai, hideo'; 'mukuge, masatsugu';
'victor.schubert@discovision.com'; Tarzia, Dale (US - New York)
**Subject:** FW: DVA-Toshiba Matter (Confidential)

Takei-san,

Please let us know that you have received the email below, dated June 22, with our latest comments on the CDA.  In addition, let us know when we should expect to receive a response from you on our comments.  If you agree with all of the changes please let us know so we can finalize this and move forward.

Regards,


**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

**From:** Amendola, David (US - New York)
**Sent:** Friday, June 22, 2007 2:05 PM
**To:** 'takei, akira'
**Cc:** Tarzia, Dale (US - New York); mukuge, masatsugu; kumagai, hideo; victor.schubert@discovision.com; takeshi.tamashiro@toshiba.co.jp
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

We have reviewed your comments on the Confidentiality Agreement. I have attached to this email the file containing our response to your changes. I have included our comments in a "Comment Box" that have the initials DA in them. Please let me know if you have any questions.

Regards,


**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414


**From:** takei, akira [mailto:akira.takei@toshiba.co.jp]
**Sent:** Tuesday, June 19, 2007 5:20 AM
**To:** Amendola, David (US - New York)
**Cc:** Tarzia, Dale (US - New York); mukuge, masatsugu; kumagai, hideo; victor.schubert@discovision.com; takeshi.tamashiro@toshiba.co.jp
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Dear Mr. Amendola:

The attached is our revised version of Confidential Agreement, with our comment inserted thereinto with ### mark. We are very much uncomfortable with your negotiation manner, changing languages thereof without any remarks.

Regards,

Akira Takei
Toshiba Corp.

**From:** Amendola, David (US - New York) [mailto:daamendola@deloitte.com]
**Sent:** Thursday, May 24, 2007 4:19 AM
**To:** takei, akira
**Cc:** Tarzia, Dale (US - New York); mukuge, masatsugu; kumagai, hideo;
victor.schubert@discovision.com; takeshi.tamashiro@toshiba.co.jp
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

We reviewed the comments that you had and I have attached a copy that includes our comments.  I have
accepted all the changes that we both have made and do not have comments on.  Please let me know if
you have any questions.

Thanks,


**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414


**From:** takei, akira [mailto:akira.takei@toshiba.co.jp]
**Sent:** Friday, May 11, 2007 6:58 AM
**To:** Amendola, David (US - New York)
**Cc:** Tarzia, Dale (US - New York); mukuge, masatsugu; kumagai, hideo;
victor.schubert@discovision.com; takeshi.tamashiro@toshiba.co.jp
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Dear Mr. Amendola:

Due to several urgent issues to be handled with priority and also our Japanese Golden Week
holiday, our response in this regard was delayed.  The attached is our counter draft, in red
version, of the Confidential Agreement, with our comments inserted thereinto with ### mark.
Please review the same and let us know whether it is acceptable for you.

Best regards,

Akira Takei
Toshiba Corp.

**From:** Amendola, David (US - New York) [mailto:daamendola@deloitte.com]
**Sent:** Friday, April 06, 2007 1:07 AM
**To:** takei, akira
**Cc:** Tarzia, Dale (US - New York); mukuge, masatsugu ; kumagai, hideo ; victor.schubert@discovision.com
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Takei-san,

Please let me know what the status is of your review of the Non-Disclosure Agreement we provided to you on February 28, 2007 and when we can expect to receive your response.

Regards,


**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

**From:** takei, akira [mailto:akira.takei@toshiba.co.jp]
**Sent:** Thursday, March 08, 2007 7:14 PM
**To:** Amendola, David (US - New York)
**Cc:** Tarzia, Dale (US - New York); mukuge, masatsugu ; kumagai, hideo ; victor.schubert@discovision.com
**Subject:** RE: DVA-Toshiba Matter (Confidential)

Dear Mr. Amendola:

We have received your e-mail enclosing your counter proposal of the Confidential Agreement with your firm.  Taking a brief look at the same, we can not understand why you believe we can accept such your proposing language.  For example, as clearly specified in Section 6.7 of the Patent License Agreement between Toshiba and DVA, you shall be instructed to report to DVA only the amount of royalties due and payable.  No more rights and/or flexibility you can obtain under this Confidential Agreement since your audit services will be rendered pursuant to such Patent License Agreement.  Furthermore, why do we have to waive our rights to obtain permissible remedies and relief in case of your breach of this Confidential Agreement ?  Sticking to obtain terms and conditions preferable to you only will lead to derogate from the relationship between Toshiba and DVA, your client, and simply delaying on-going negotiation therebetween for possible renewal of such Patent License Agreement.

In any event, we will review carefully your counter proposal and try to provide you with our further counter languages, hopefully by the end of this month, though we are strictly busy this month which is the end of our fiscal year.

Regards,

Akira Takei
Toshiba Corp.

---

**From:** Amendola, David (US - New York) [mailto:daamendola@deloitte.com]
**Sent:** Wednesday, March 07, 2007 1:03 AM
**To:** takei, akira
**Cc:** Tarzia, Dale (US - New York)
**Subject:** RE: DVA-Toshiba Matter

Takei-san,

Please confirm that you received our comments on the Non-Disclosure Agreement that we sent to you on February 28, 2007 and when we can expect to receive your response.

Regards,

**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

---

**From:**  Amendola, David (US - New York)
**Sent:**  Wednesday, February 28, 2007 2:09 PM
**To:**  Akira Takei (akira.takei@toshiba.co.jp)
**Cc:**  Tarzia, Dale (US - New York)
**Subject:**  DVA-Toshiba Matter

Takei-san,

We received your comments on our Non-Disclosure Agreement ("NDA"), which we sent to you on October 5, 2006, that was included in your fax dated February 16, 2007. We have read through your comments on the NDA and noted that some changes are acceptable and other are not. Therefore, we have included the attached file that contains a "track change version" of your comments and our comments. If these changes are acceptable to you please confirm via email. If you have any questions please let me

know.

Regards,

**David Amendola**
Deloitte Financial Advisory Services LLP

Office: (212) 436-3069
Fax: (212) 653-4884
daamendola@deloitte.com
www.deloitte.com

Two World Financial Center
New York, New York 10281-1414

     << File: NDA for Toshiba_DTFAS Response_Cmt.doc >>

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law.  If you are not the intended recipient, you should delete this message.

Any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited. [v.E.1]