```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DISCOVISION ASSOCIATES, a California    :
Partnership,                            :
                                        :
              Plaintiff,                :     08cv3693 (HB)(AJP)
                                        :     OPINION &
         -against-                      :     ORDER
                                        :
TOSHIBA CORPORATION, a Japanese         :
Corporation,                            :
              Defendant.                :
------------------------------------------------------------x
```

**Hon. HAROLD BAER, JR., United States District Judge:**

Plaintiff Discovision Associates ("DVA") ("Plaintiff") filed a complaint on April 17, 2008 against Toshiba Corporation ("Toshiba") ("Defendant") alleging several breaches of their non-exclusive license agreement, including the right to audit and accounting with respect to royalties to which DVA is entitled under the agreement. Pursuant to Fed. R. Civ. P. 56(f), Plaintiff moves for partial summary judgment on its claim to enforce its right to an audit of the royalties under the license agreement. Defendant opposes the motion on the basis that the scope of the audit by the Plaintiff is overly broad and exceeds the scope of the agreement. For the reasons stated below, I find that the Plaintiff's motion must be DENIED.

## I. FACTS

Plaintiff Discovision Associates ("DVA"), as licensor, and defendant Toshiba Corporation ("Toshiba"), as licensee, entered into a Non-Exclusive Limited Worldwide Patent License Agreement (the "License Agreement") for Playback and Recording Products on March 31, 2003. (Toshiba Rule 56.1 Stmt. ¶ 1.) Section 6.7 of the subject license agreement provides that:

> LICENSEE shall keep separate records in sufficient detail to permit determination of royalties payable hereunder. At the request of DVA, LICENSEE shall permit independent auditors or technical consultants selected by DVA to examine . . . such records and other documents as may be necessary to verify or determine royalties paid or payable under this agreement. Such auditors or technical consultants shall be instructed to report to DVA only the amount of royalties due and payable. If no request for examination of such records for any particular accounting period has been made by DVA within three (3) years after the end of said period, the right to examine such records for said period, and the obligation to keep such records for said period, will terminate.

(Tarzia Decl., Ex. 1, § 6.7.)

1

On August 15, 2006 and after the March 31, 2006 expiration of the license agreement, DVA informed Toshiba that it elected to exercise its royalty inspection rights and had selected Deloitte to do the work. (Toshiba 56.1 Stmt. ¶ 4.) DVA hired Deloitte & Touche LLP ("Deloitte") to conduct a royalty inspection of Toshiba's books and records pursuant to § 6.7 of the license agreement. (Toshiba 56.1 Stmt. ¶ 3.) On September 5, 2006 Deloitte sent Toshiba a letter stating that it had been authorized to perform the royalty inspection of records dating back to March 31, 2003. (Toshiba 56.1 Stmt. ¶ 5.) On September 7th, Deloitte sent Toshiba a follow-up letter (the "September 7th letter") containing a "preliminary list" of initial documents and information that it deemed "necessary" for the royalty inspection.

The September 7th request was to include information "with respect to the sale of all products as defined in the Agreement (the "Licensed Products") for the period January 1, 2003[1] through March 31, 2006." (Compl., Ex. 3.) Deloitte requested items such as "description of inventory movement from production to distribution to final unaffiliated user sale;" a description of any and all deductions taken against royalties payable to DVA during the Period;" "updated royalty statements;" as well as the personnel responsible for maintaining the supporting documentation for the royalty reports;" and detailed sales reports of the Licensed Products. (Compl., Ex. 3, ¶¶ 2-7.) The list also included requests for the following:

1. A listing and associated descriptions of all Licensed Products, product numbers (SKU number), technologies, and/or processes.
2. All relevant price lists, including, but not limited to, catalogs of the Licensed Products.
3. Access to all accounting records, including but not limited to, account receivable and aging reports.
4. Access to all manufacturing facilities and personnel, including but not limited to, all Toshiba affiliates and subsidiaries.
5. Key personnel available to answer questions as they arise.

Toshiba, disagreed with the scope of the royalty inspection, asserting that some of the requested information was overly broad, intrusive, and irrelevant to calculating royalties paid and due. (Toshiba 56.1 Stmt. ¶ 7.) Because Toshiba refuses to provide Deloitte with all of the information requested in the September 7th letter, DVA contends that Toshiba has denied them their

---

[1] The parties also disputed the start date of the audit under the contract, since § 6.7 of the License Agreement limits the right to audit to within three years of the request, here, August 15, 2003, since the request was made August 15, 2006. The initial demand letter stated that the audit would cover "all royalty reporting periods ending June 30, 2003 through the period ending March 31, 2006." (Compl., Ex. 2.) The Deloitte letter goes back as far as January 1, 2003. (Compl., Ex. 3.) In its Reply Memorandum, DVA concedes that it is not entitled to audit data prior to August 2003, three years period within the date of the audit request. (Pl. R. Mem. 2, n.2.) However, DVA maintains its right to discovery about the prior reporting period, April through June 2003. *Id.*

2

contractual right to conduct an audit, and thus, is in breach of § 6.7 license agreement.

As a threshold matter, DVA argues that Toshiba's refusal to grant Deloitte access to the information requested in the September 7th letter constitutes a breach of their license agreement. By reason of the alleged breach, DVA argues that it is entitled to partial summary judgment on its audit claim pursuant to Rule 56(f).

## II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the initial burden of establishing the nonexistence of a "genuine issue." Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Once the movant has discharged his duty, "the onus then shifts to the non-moving party, who [m]ust go beyond the pleadings . . . [and] designate specific facts showing that there is a genuine issue for trial." Id. at 23. A "genuine issue" exists where there is evidence upon which a jury could reasonably find in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A party seeking to justify its opposition to a summary judgment motion under Fed. R. Civ. P. 56(f) must submit an affidavit explaining, among other things, "what facts are sought and how they are to be obtained; . . . what efforts the affiant has made to obtain those facts; and . . . why those efforts were unsuccessful." Nat'l Union Fire Ins. Co. v. Stroh Cos., 265 F.3d 97 (2d Cir. 2001) (citing Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 926 (2d Cir. 1985). Even where a Rule 56(f) motion is properly supported, a district court may refuse to allow additional discovery "if it deems the request to be based on speculation as to what potentially could be discovered." Nat'l Union Fire Ins. Co., 265 F.3d at 97 (citing Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994).

## III. DISCUSSION

DVA argues that because the license agreement similarly gives them an undisputed right to conduct an audit, they are entitled to partial summary judgment. Defendant Toshiba does not dispute DVA's right to an audit, but argues that summary judgment is inappropriate because DVA fails to address the only disputed issue, i.e., the permissible scope of the materials that DVA's auditors are entitled to review. (Def. Opp. Mem. 5-8.) Particularly, Toshiba maintains that some of the requested information bears no relevance to the question of royalties due and thus, is not authorized under their agreement. (Def. Opp. Mem. 5-7.) Moreover, Toshiba emphasizes the fact that DVA and Deloitte have not yet provided evidence or given any explanation as to why the information requested is necessary. (Def. Opp. Mem. 8-10.) For example, Toshiba claims that

3

Deloitte requested copies of Toshiba's accounting records for both licensed and non-licensed products, descriptions of Toshiba's technologies and processes, and access to all of Toshiba's manufacturing facilities and personnel, including all of Toshiba's affiliates and subsidiaries. (Tarzia Decl., Ex. 4, ¶ 12.) Toshiba also notes that despite the fact that under the license agreement, audit demands must be submitted within three years of the accounting period, (Tarzia Decl., Ex. 1, § 6.7), DVA did not demand an audit until August 15, 2006, some three years after the license agreement came into being.

Additionally, Toshiba argues that under both controlling Second Circuit precedent and Rule 56(f), this Court should deny DVA's partial summary judgment motion as premature because it had not yet even answered the complaint, has been precluded by Rule 26(d) from taking any discovery, and DVA had not yet served its initial disclosures. (Def. Opp. Mem. 8-9.) Under Rule 56(f), "if a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; [or] (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken." Fed. R. Civ. P. 56(f). Toshiba suggests that discovery, such as deposing the author of the September 7th letter, is crucial in order to learn the factual basis, if any, underlying DVA's contention that the materials requested are necessary. (Stewart Decl. ¶ 1.) Toshiba also maintains that discovery is essential to demonstrate that DVA has no factual basis for seeking many of the materials demanded and thus, discovery is necessary to prove that there are genuine issues of material fact. (Stewart Decl. ¶ 1.)

DVA argues that under Moran v. Sasso, No. 05 Civ. 4716, 2007 WL 2710967, at *4 (E.D.N.Y. Sept. 13, 2007), partial summary judgment is proper where a party seeks to enforce its unambiguous contractual right to conduct an audit. In Moran, a contract requiring the defendants to make contributions to the plaintiffs' fringe-benefit funds contained a provision allowing plaintiffs to audit the defendants' books and records. Id., at *1. When the defendant failed to make the requisite payments, plaintiffs brought an action seeking to enforce their contractual right to the audit. Id., at *3. The defendants' argued that plaintiffs' sought a number of nonexistent records, but conceded as to plaintiffs' right to an audit. Id., at *2. The Moran court granted plaintiff summary judgment, holding that notwithstanding the dispute as to whether defendants in fact refused to allow an audit, summary judgment was appropriate since there was no dispute as to plaintiffs' right to an audit. Moran, 2006 WL 2710967, at *4. Defendants correctly point out that Plaintiff's reliance on Moran, and Trustees of the Plumbers & Steamfitters Local 267 Pension v. Buchanan, Inc., No. 03 Civ. 898,

4

2006 WL 346421 (N.D.N.Y. Feb. 14, 2006) in support of its motion is misplaced. (Def. Opp. Mem. 7-8.) In Moran, the court found no dispute as to the scope of the audit or the right to conduct the requested audit; rather, the issue concerned whether or not plaintiffs' sought access to nonexistent records and whether defendant refused to permit the audit, thus the court entered partial summary judgment to conduct the audit. Moran, 2006 WL 2710967, at *4. Here, the issue is the scope, not the right, to the audit that is in question. In Plumbers, plaintiffs sought injunctive relief permitting them to conduct an audit. The court, in granting plaintiffs injunctive relief, also did not address the scope of the audit, but rather whether the agreement between the parties contained provisions that entitled plaintiffs to conduct an audit. Plumbers, 2006 WL 346421, at *1. Thus, neither case helps DVA, since conduct of the audit is not the issue. In fact the parties were negotiating not whether but *how* the audit would be conducted.

On the other hand, in Revson v. Claire's Stores Inc., plaintiff sought partial summary judgment determining that the defendant breached audit provisions contained in the parties' written license agreement based on the defendant's admission that it had denied the plaintiff's accountant's request to perform an audit. Revson v. Claire's Stores Inc., 120 F. Supp. 2d 322, 326 (S.D.N.Y. 2000). The defendant objected to accountant's request because it felt that the "request sought access to far more than plaintiff was entitled to see. Id. The court denied plaintiff's motion and stated that the fact that the defendant admitted to having denied the audit request does not necessarily establish the absence of a genuine issue of material fact regarding the breach of the license agreement because it was not clear that the plaintiff's accountant was entitled to inspect the records sought. *Id.* Further, Nano-Proprietary, Inc. v. Keesman, No. 06 Civ. 2689, 2007 WL 433100 (N.D.Ill. Jan. 13, 2007) also involved a licensee's refusal to permit an audit pursuant to a licensing agreement because of disagreements as to the audit's scope. The Nano-Property court found that, due to the unique property that the licensee was trying to protect, the licensee's response to the audit request and its attempt to contain the audit's scope was reasonable. Id., at *5.

Here, as in Revson and Nano, the dispute relates to the scope of the audit and not to the right to conduct the audit, i.e., Toshiba concedes to DVA's right to an audit but argues that Deloitte requests access to far more information than it is entitled to review. The only thing that has been presented to this court offering any guidance as to the permissible scope of the audit is § 6.7 of the license agreement, which provides that DVA is entitled to review "such records and other documents as may be *necessary*." (Toshiba 56.1 Stmt. ¶ 2 (emphasis added).) Indeed, the term

5

"necessary," in and of itself, affords minimal aid, leaving it unclear whether Deloitte is entitled to review the records that it requested.

DVA insists that interpretation of the audit provision is left to the independent auditor. (Pl. R. Mem. 2.) In fact, the Dale Tarzia Declaration provided by the Senior Manager at Deloitte who authored the September 7 request to Toshiba provides no explanation from his prior experience or in this particular instance why the materials he requested relate to the requirements of § 6.7 or any other royalty inspection. (See generally Tarzia Decl.) His only reference to other royalty inspections is that they typically take two months to conclude. (Tarzia Decl. ¶ 5.)

Thus, Toshiba's having denied Deloitte access to the records it requested in its September 7th letter does not necessarily establish the non-existence of a genuine issue of material fact required to prevail on its motion. Revson, 120 F. Supp. 2d at 326. Moreover, because Deloitte requested access to information concerning unique property, i.e., descriptions of Toshiba's technologies and processes, Toshiba's objection to the audit request and attempt to confine the audit's scope is reasonable. Nano-Property, 2007 WL 433100, at *5.

Because this Court finds that a genuine issue of material fact exists with regard to the permissible scope of the royalty inspection, it is unnecessary to address the issue of whether or not plaintiff's motion for partial summary judgment should be denied as premature under Rule 56(f). The fact is the taking of detailed discovery at some expense to both sides seems available. There is no doubt that some records must be produced—the question is how many and of what sort. It may be that with the help of a Magistrate Judge, the matter can be resolved in an amicable fashion and at no great expense. If this does not solve the issue, neither party will be the worse for it and we will get on with the litigation.

## IV. CONCLUSION

Based on the foregoing reasons, Plaintiff's motion for partial summary judgment on the audit is denied. The matter is referred to Magistrate Judge Andrew J. Peck for settlement of all open items.

SO ORDERED
New York, New York
October 7, 2008

Harold Baer
U.S.D.J.

6